UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRISHA LOCKWOOD,

          Plaintiff,

    v.                                                                    21-CV-941-LJV
                                                                                    DECISION & ORDER

DUNKIRK CITY SCHOOL DISTRICT,

          Defendant.

_____

On August 18, 2021, the plaintiff, Trisha Lockwood, commenced this action

raising claims under the Age Discrimination in Employment Act ("ADEA") and several

other statutes.  Docket Item 1.  On February 22, 2024, the defendant, Dunkirk City

School District ("Dunkirk"), moved for summary judgment, Docket Item 41; on April 22,

2024, Lockwood responded, Docket Item 47; and on May 13, 2024, Dunkirk replied,

Docket Item 52.  On September 19, 2024, this Court heard oral argument and reserved

decision.  *See* Docket Item 58.  For the reasons that follow, the Court grants Dunkirk's

motion.

**FACTS[1]**

Lockwood began working for the Dunkirk school system in August 2019 when she was 42 years old.  Docket Item 1 at ¶¶ 1-3.[2]  Daniel Genovese, a Dunkirk school principal who Lockwood estimated was in his "late fifties, early sixties," hired Lockwood after he interviewed her.[3]  Docket Item 41-4 at 52; Docket Item 41-17 at ¶¶ 3-4; Docket

---

[1] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

[2] Lockwood's complaint contains two sets of paragraph numbers.  Unless otherwise noted, this Court refers to the second set of numbers, which begin on page 3 of the complaint.

[3] In its statement of undisputed facts, Dunkirk asserted that Genovese "decided to hire [Lockwood]."  Docket Item 41-17 at ¶ 3.  Dunkirk supported that assertion with Genovese's affidavit "based on [his] personal knowledge of the facts."  *See id.*; Docket Item 41-6 at ¶¶ 2, 11 (Genovese was "the person who decided to hire [Lockwood].")  In other words, Dunkirk properly supported its factual assertion with admissible facts in an affidavit based on the personal knowledge of an affiant competent to testify on the matter.  *See* Fed. R. Civ. P. 56(c)(4).

In response, Lockwood said, "This is not a material fact.  It is at most a subordinate fact relating possibly to [Dunkirk's] ostensible [legitimate nondiscriminatory reason.  Dunkirk] has failed to demonstrate that this is undisputed because [Dunkirk] relies only on its own witness's [affidavit] to support it.  [Lockwood] has no personal knowledge of who did or did not make the decision to hire her."  Docket Item 47-1 at 4, ¶ 3.  So Lockwood disputed Dunkirk's factual assertion.  But her reasons for doing so do not pass muster.

First, as to materiality, an employer's reasoning is at the heart of an age discrimination claim, *see* 29 U.S.C. § 623(a)(1), so the identity of the decisionmaker "might affect the outcome of the suit under the governing law" and plainly is material, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And as this Court explains in more detail below, *see infra* Section II, Dunkirk was permitted to support its assertion of fact with an affidavit from its own witness, *see* Fed. R. Civ. P. 56(c)(1)(A).

Moreover, to the extent that Lockwood disputes that Genovese was the decisionmaker, she has not cited anything in the record to support her assertion, *see id.*, nor has she attempted to show "by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition," *see* Fed. R. Civ.

Item 47-1 at ¶ 4.[4]  Lockwood then taught fourth grade for one school year.  Docket Item 1 at ¶¶ 3, 24.

During that year, Lockwood developed concerns about two educational support teachers who sometimes taught in her classroom.  *Id.* at ¶¶ 9-10.  Those teachers— Pam Pleszewski and Kalene Szary, who Lockwood estimated were in their late fifties to early sixties and mid-twenties, respectively, Docket Item 41-4 at 42 and 47—"wanted to be involved in lesson planning for the class" but lacked "supervisory authority" over Lockwood, Docket Item 1 at ¶¶ 11-12.  Lockwood's schedule also "was a source of contention" because Lockwood sometimes was unavailable to meet with Pleszewski or Szary.  *Id.* at ¶ 20.

Lockwood told Genovese about her concerns, but Pleszewski and Szary "continued to undermine" her teaching.  *Id.* at ¶¶ 10-13.  Pleszewski "verbally berated [Lockwood] in front of her class[,] saying, 'I'm done working with you.  You are difficult to work with and don't communicate.  You should have been doing other things with the kids.'"  *Id.* at ¶ 15.  Pleszewski encouraged Lockwood's students and their families to complain to Genovese that Lockwood was a bad teacher.  *Id.* at ¶¶ 16-18.

_____

P. 56(d).  Lockwood had 19 months to complete discovery, *see* Docket Items 13 and 30, and she cannot raise a disputed fact simply by saying that she lacks personal knowledge*, see Chapman v. Finnegan*, 950 F.Supp.2d 285, 291 n.3 (D. Mass. 2013) ("A party opposing summary judgment cannot create a genuine issue of fact by denying statements, which the moving party contends are undisputed and supported by sufficient evidence, on the basis that he lacks knowledge and information to admit or deny the statement.").  In sum, because Lockwood gave insufficient reasons for her bald dispute of Dunkirk's supported assertion of fact, this Court "consider[s] the fact undisputed for purposes of the motion."  *See* Fed. R. Civ. P. 56(e)(2).

[4] Page numbers in docket citations refer to ECF pagination.

Others at the school observed the conflict and sided with Lockwood.  For example, one staff member believed that "Pleszewski was trying to get [Lockwood] into trouble."  *Id.* at ¶ 21.  Another said that Genovese had watched "Pleszewski exert power and harass other staff for 15 years."  *Id.* at ¶ 22.

In March 2020, Genovese recommended that Lockwood be fired at the end of the school year, Docket Item 41-17 at ¶¶ 50-51, and in April 2020, Dunkirk's interim superintendent notified Lockwood about the recommendation to fire her, *id.* at ¶ 56.[5]

---

[5] Dunkirk asserted that (1) Genovese recommended terminating Lockwood and (2) in April 2020, Dunkirk's interim superintendent notified Lockwood about the recommendation to fire Lockwood.  Docket Item 41-17 at ¶¶ 51, 56.  Dunkirk supported both assertions with Genovese's affidavit; it also supported the second assertion with a copy of a letter from the interim superintendent to Lockwood.  *See id.*; Docket Item 41-6 at ¶ 91; Docket Item 41-11 at 2 ("This is to notify you . . . [that] I will be recommending to the Board of Education that your services as a probationary teacher . . . will be discontinued effective at the close of business June 30, 2020.").  So again, *see supra* note 3, Dunkirk properly supported its factual assertions.

Lockwood disputed the two factual assertions by saying: "These are not material facts.  They are at most a subordinate fact [sic] relating possibly to [Dunkirk's] ostensible [legitimate nondiscriminatory reason.  Dunkirk] has failed to demonstrate that these are undisputed because [Dunkirk] relies only on its own witness's [affidavit] to support them."  Docket Item 47-1 at 11.  And again, *see supra* note 3, Lockwood's purported dispute of the facts is insufficient.

First, both facts are indeed material.  The first factual assertion, about the identity of the person who decided to fire Lockwood, is material given the importance of the employers' reasoning to a claim of age discrimination.  And the second factual assertion is material to the issue of whether there was an adverse employment action.  *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).  Indeed, Lockwood cited the second asserted fact to make her prima facie case.  Docket Item 47-1 at 3.

Moreover, to the extent that Lockwood disputes the two factual assertions, she has not cited anything in the record to support that dispute.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Contrary to Lockwood's argument, Dunkirk indeed was permitted to cite Genovese's affidavit to support the two asserted facts at issue.  *See infra* Section II.  And Lockwood does not even address the letter, which is another piece of evidence that supports the second factual assertion.  Therefore, Lockwood insufficiently contested

About a month later, Lockwood told the superintendent that she had been bullied and harassed by Genovese, Pleszewski, and Szary.  Docket Item 41-17 at ¶ 66; Docket Item 47-1 at 12.

Dunkirk referred Lockwood's complaint to the local Board of Cooperative Educational Services, which conducted an independent, outside investigation.  *See* Docket Item 49; Docket Item 41-17 at ¶ 67; Docket Item 47-1 at 12.  The investigator issued a 38-page report[6] "substantiat[ing] the claims of harassment by [] Pleszewski against [] Lockwood," rejecting Lockwood's allegations against Szary and Genovese, and finding "no evidence that [] Lockwood's age played any role in the way that she was treated during her employment."[7]  Docket Item 49 at 33, 36-38.

---

these two supported assertions of fact, and this Court considers them undisputed for purposes of the motion.  *See* Fed. R. Civ. P. 56(e)(2).

[6] Lockwood said that she had only a "heavily redacted copy" of the report. Docket Item 47 at 4 n.3.  Dunkirk responded that it had given her an unredacted copy of the report in 2022, Docket Item 54 at 1; Docket Item 54-1, and Lockwood certainly had access to the unredacted copy on the docket no later than April 29, 2024, *see* Docket Items 49 and 53.  Nevertheless, this Court allowed Lockwood to supplement her response given her contention that she had not received the unredacted report, Docket Item 53, but Lockwood failed to do so.

[7] The investigator concluded that "Pleszewski exhibited harassing behavior when she spoke negatively about [] Lockwood to [another teacher] and when she caused a student's [parent] to call [] Lockwood's teaching abilities into question.  Because of these two [] incidents, it is a logical conclusion that [] Pleszewski violated the policy [that prohibits discrimination, harassment, and bullying]. . . .  Pleszewski should have kept her thoughts to herself instead of talking negatively to [the other teacher] about [] Lockwood.  Similarly, [] Pleszewski should have exercised better judgment when she engaged a parent in a conversation that led to a confrontational meeting between the parent and [] Lockwood."  Docket Item 49 at 36.

Lockwood's employment was terminated on June 30, 2020.  Docket Item 1 at ¶ 24.  She was replaced by a 28-year-old woman.  *Id.* at ¶ 25; Docket Item 7 at ¶ 25.[8]

Lockwood filed a charge of discrimination with the New York State Division of Human Rights ("the Division").  Docket Item 1 at ¶ 6 (page 2).  The Division investigated and found that the evidence did not support a reasonable belief that Lockwood was discriminated against based on her age, sex, or family status.  Docket Item 41-16 at 2-3.

Lockwood then brought claims in federal court of discrimination based on age (first cause of action); based on sex (second cause of action); based on disability (third cause of action); and in violation of the Family Medical Leave Act ("FMLA") (sixth cause of action).  Docket Item 1 at ¶¶ 29-40, 49-50.  She also raised claims of retaliation based on disability in violation of the Americans with Disabilities Act (fourth cause of action) and based on sex in violation of Title VII (fifth cause of action*).  Id.* at ¶¶ 41-48.  In her response to Dunkirk's motion for summary judgment, however, Lockwood "withdr[ew] any claims based on sex, disability[,] or the FMLA."  Docket Item 47 at 2.  In other words, she withdrew her second through sixth causes of action.  As Lockwood confirmed at oral argument, her only remaining claim is discrimination based on age under the ADEA.

---

[8] With Dunkirk's answer, Docket Item 7—as with Lockwood's complaint—this Court references the paragraph numbers beginning on page 3 unless otherwise indicated.

**LEGAL PRINCIPLES**

**I.     SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56, a court appropriately grants summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant"—that is, the party seeking summary judgment—"has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant may satisfy its burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the non[-]moving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see* Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has satisfied its initial burden, "the non[-]moving party must come forward with specific facts showing that there is a genuine issue for trial"—that is, that a "rational trier of fact [could] find for the non-moving party" on the "record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations, emphasis, and internal quotation marks omitted). If the non-moving party fails to do so, the court will grant summary judgment. *See Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, "the [C]ourt must view the evidence in the record in the light most favorable to the non-moving party" and "draw[] all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Matsushita*, 475 U.S. at 586 (when the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment). Instead, under Rule 56, the party opposing a motion for summary judgment must "properly support an[y] assertion[s] of fact" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), (e); *Celotex*, 477 U.S. at 324. And "[w]hile evidence produced by the party opposing a summary judgment motion need not be in a form that would be admissible at trial, its content must nonetheless be admissible." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675-76 (S.D.N.Y. 2012) (internal citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(4) (requiring that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

## II.     ADEA

Under the ADEA, it is "unlawful" for employers to "fail or refuse to hire,"

"discharge," or "otherwise discriminate against" an employee or potential employee

"because of [that] individual's age."  29 U.S.C. § 623(a)(1); *see Trans World Airlines,*

*Inc. v. Thurston*, 469 U.S. 111, 120 (1985) ("Section 4(a)(1) of the [ADEA] proscribes

differential treatment of older workers with respect to a privilege of employment."

(alterations, citation, and internal quotation marks omitted)).  The ADEA protects all

those who are at least 40 years old.  29 U.S.C. § 631(a).  Courts "analyze ADEA claims

under the same framework as claims brought pursuant to Title VII," *Schnabel v.*

*Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (citation and internal quotation marks

omitted), which prohibits employers from discriminating on the basis of "race, color,

religion, sex, or national origin," 42 U.S.C. § 2000e-2(a).

Plaintiffs may prevail on an employment discrimination claim in one of two ways.

First, a plaintiff may "present direct evidence of discrimination."  *Johnson v. New York*,

49 F.3d 75, 78-79 (2d Cir. 1995) (citing *Trans World Airlines*, 469 U.S. at 121).

Alternatively, a plaintiff may produce indirect evidence that satisfies "the three-step,

burden-shifting framework established by the Supreme Court in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973)."[9]  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76

(2d Cir. 2005); *see Johnson*, 49 F.3d at 78-79.

---

[9] The Supreme Court has never explicitly held that *McDonnell Douglas* applies to age discrimination claims.  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (assuming without deciding that "the *McDonnell Douglas* framework is fully applicable" to ADEA case); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009).  But circuit courts, including the Second Circuit, generally have held that it does. *See Reeves*, 530 U.S. at 141-42 (collecting cases); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3 (2d Cir. 2021) ("Although the Supreme Court has left open whether the evidentiary framework of *McDonnell Douglas* is appropriate in the ADEA

A plaintiff taking the second approach "bears the initial burden to establish a prima facie case of age discrimination." *Woodman*, 411 F.2d at 76 (emphasis omitted). "To establish a prima facie case, a plaintiff with an age discrimination claim must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (citation and internal quotation marks omitted); *see McDonnell Douglas*, 411 U.S. at 802.  If a plaintiff meets that initial burden—which the Second Circuit has characterized as "de minimis," *Abdu-Brisson*, 239 F.3d at 467 (emphasis omitted)—the burden shifts to the employer, who must "offer a legitimate, nondiscriminatory business rationale for its actions." *Schnabel*, 232 F.3d at 87.  "If the employer articulates such a reason, the plaintiff has the burden of proving that . . . age was the real reason for [the plaintiff's] discharge." *Id.* And in an age-discrimination case, the plaintiff must prove that age was the but-for cause of the challenged adverse employment action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009).

Although the Second Circuit has "sometimes noted that an extra measure of caution is merited" when considering motions for summary judgment in discrimination cases, it has made clear that "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact."  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted); *see also*

---

context, we remain bound by our precedent to apply the framework to ADEA claims." (citation and internal quotation marks omitted)).

*Abdu-Brisson*, 239 F.3d at 466 ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

### DISCUSSION

So to survive a motion for summary judgment in an employment-discrimination case, the plaintiff must produce "direct evidence of discrimination," *see Trans World Airlines*, 469 U.S. at 121, or satisfy the *McDonnell Douglas* framework by (1) establishing a prima facie case of age discrimination and (2) rebutting as "pretextual" any "legitimate, nondiscriminatory reason" asserted by the employer for the adverse employment action, *see Schnabel*, 232 F.3d at 87-91.  Because Lockwood presents no direct evidence that Dunkirk discriminated against her based on her age, *see* Docket Item 47 at 5-6 (conceding it is "true" that there is no direct evidence that age played any part in the adverse employment action), the Court reviews her claim under the *McDonnell Douglas* framework.

### I.  PRIMA FACIE CASE

Lockwood has established a prima facie case of age discrimination.  Indeed, Dunkirk does not question that Lockwood satisfies the first three elements of a prima facie case: she is within the protected age group, is qualified for the position, and was fired from her job.  *See* Docket Item 41-18 at 21-25; Docket Item 7 at ¶ 1, Docket Item 1 at ¶ 1 (admitting that Lockwood was born in 1977); Docket Item 7 at ¶ 6, Docket Item 1 at ¶ 6 (admitting that Lockwood holds certifications in grades one to six); Docket Item 41-17 at ¶ 56 (stating that Dunkirk informed Lockwood that she would be terminated).  Dunkirk disputes only the fourth element: whether Dunkirk fired Lockwood under

circumstances giving rise to an inference of discrimination.  *See* Docket Item 41-18 at 21-25; Docket Item 52 at 9-11.

Lockwood argues that she can satisfy her burden as long as her work is still being performed by someone else.  Docket Item 47 at 12; Docket Item 47-1 at 3.  But that is incorrect because she must at least raise an inference of age discrimination, *see Bucalo*, 691 F.3d at 129, and there obviously can be no inference of age discrimination when a worker is replaced by someone the same age or older*, see Chuang v. T.W. Wang Inc.*, 647 F.Supp.2d 221, 239 (E.D.N.Y. 2009) ("No inference of discrimination can be drawn from the replacement of [the plaintiff] by a worker of the same age."); *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 600 (ADEA does not preclude "an employer from favoring an older employer over a younger one").  Indeed, an inference of discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger."  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

But a plaintiff can satisfy her burden by showing that someone "significantly younger" replaced her.  *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000).  For example, in *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 96, 107 (2d Cir. 2010), an employee in her mid-forties was replaced by a 22-year-old, giving rise to an inference of discrimination.  *See also Tarshis v. Riese Organization*, 211 F.3d 30, 38 (2d Cir. 2000) (finding inference of discrimination in part because 59 year old replaced 67 year old), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 509-10 (2002); *Schnabel*, 232 F.3d at 85, 87 ("[T]he fact that [an employee in his sixties] was replaced by a 31-year-old is sufficient to give rise to the inference that he

was the victim of discrimination.").  Here, Lockwood was replaced by a teacher who was fifteen years younger and therefore has established an inference of discrimination.[10] *See* Docket Item 7 at ¶ 25; Docket Item 1 at ¶ 1.

In sum, because the prima facie burden "is not a heavy one," Lockwood meets it by showing that she "was over forty years old, was undisputedly qualified for her position, was fired, and was then replaced by a woman in her twenties."  *See Gorzynski*, 596 F.3d at 107 (citation omitted).

## II.    LEGITIMATE NONDISCRIMINATORY REASON

Once Lockwood established a prima facie case, the burden shifted to Dunkirk to rebut the presumption of discrimination with evidence that it fired Lockwood for a legitimate, nondiscriminatory reason.  *See Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  On a motion for summary judgment, the Second Circuit has explained, "[i]t is not our task, at the second stage of the *McDonnell Douglas* framework, to assess the credibility of . . . witnesses; nor is it our role to determine whether the

---

[10] Dunkirk contends that the age of the new teacher is not probative because that teacher was the "sole internal applicant for [Lockwood's] position and was therefore appointed automatically pursuant to district policy."  *See* Docket Item 52 at 10.  More specifically, Dunkirk says that the union contract required Dunkirk to allow all teachers in the school district to bid on the job before considering an outside applicant and that the teacher who replaced Lockwood was the only one who bid on the position.  *See* Docket Item 41-18 at 24-25.  Therefore, Dunkirk argues, it did not choose Lockwood's replacement, and no inference can be drawn from the age of the person who replaced her.  *Id.*  The hiring procedure Dunkirk cites undoubtedly makes the issue closer, but Dunkirk did not raise that hiring procedure as an undisputed fact for Lockwood to contest.  *See generally* Docket Item 41-17.  What is more, regardless of the procedure, there still might be reason to infer discriminatory intent—for example, if the principal knew that a younger teacher was likely to be the only one to apply and therefore to replace Lockwood.  Given the procedural issue with Dunkirk's contention and the "de minimis" nature of the prima facie burden, *Abdu-Brisson*, 239 F.3d at 467 (emphasis omitted), this Court finds that Lockwood has met that burden.

[defendant's] explanation of its action is convincing.  Instead, we ask whether [the] defendant has introduced evidence that, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason."  *Holcomb v. Iona College*, 521 F.3d 130, 141 (2d Cir. 2008) (citation and internal quotation marks omitted).  In light of that standard, Dunkirk has met its burden here.

Principal Genovese recommended firing Lockwood because of "[Lockwood's] inability to communicate and get along with her co-teachers, [her] inability to us[e] appropriate discipline and manage behavior in her classroom, [her] inability to follow his directives regarding [a behavioral management] program and on other matters, and the numerous complaints received by the District regarding [Lockwood]."  Docket Item 41-17 at ¶ 52.  Those reasons were certainly legitimate and nondiscriminatory.  And Dunkirk provided evidence that they were the actual reasons behind the termination of Lockwood's employment.

More specifically, Genovese's affidavit explained that Lockwood was unable to communicate effectively and get along with Pleszewski and Szary, who "repeatedly" told him about issues with Lockwood.  Docket Item 41-6 at ¶¶ 27, 30.  He also gave specifics about Lockwood's issues managing students' behaviors.  *Id.* at ¶¶ 48-54.  For example, Lockwood removed students from her classroom and sent them to the office several times; "there were very few instances where teachers other than [Lockwood] disciplined students" that way; and Lockwood had issues with students who never had disciplinary issues before.  *Id.* at ¶¶ 48-49, 51-52.  Lockwood also refused to implement a behavioral management system that all teachers were supposed to use.  *Id.* at ¶ 60-66.  In addition, at least five parents complained to Genovese about Lockwood's

teaching, more than half requesting that their children be removed from Lockwood's classroom.  *Id.* at ¶ 76.

Lockwood incorrectly asserts that Genovese's affidavit "cannot be considered for summary judgment."  Docket Item 47-1 at 2.  She relies on *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000), and reasons that because Genovese is a witness for Dunkirk, "all of his assertions are biased and must be tested for credibility by the [j]ury."  Docket Item 47 at 3.  But Dunkirk may use an affidavit from its own employee to support its reasons for an adverse employment action.  *See* Fed. R. Civ. P. 56(c); *Aldrich v. Randolph Cent. School Dist.*, 963 F.2d 520, 528-29 (2d Cir. 1992) (finding that school district offered legitimate nondiscriminatory reason for alleged mistreatment based solely on superintendent's affidavit).  Indeed, courts regularly rely on affidavits and deposition testimony from employers' witnesses at this stage.  *See, e.g.*, *Holcomb*, 521 F.3d at 132, 140-41 (finding legitimate nondiscriminatory reason based on deposition testimony of employer's president and officer); *Weinstock v. Columbia University*, 224 F.3d 33, 42-43 (2d Cir. 2000) (finding legitimate nondiscriminatory reason based on deposition testimony of those who helped make adverse employment decision); *Walker v. Univ. of Rochester, Strong Mem'l Hosp.*, 2008 WL 3851838, *3-5 (W.D.N.Y. Aug. 14, 2008) (finding legitimate nondiscriminatory reason for not placing plaintiff in more work assignments based on affidavits of employees involved in staffing and hiring).  As in these examples, Dunkirk sufficiently rebutted the presumption of discrimination with its own evidence of a legitimate, nondiscriminatory reason for firing Lockwood.

Lockwood conceded at oral argument that an affidavit sometimes can show legitimate nondiscriminatory reasons, but she argued that Genovese's affidavit was insufficient to do so here based on a finding that Genovese was complicit in harassing Lockwood.  Lockwood did not cite evidence to support the premise that there was such a finding, however, and when this Court reviewed the record, it found only evidence to the contrary.  For example, the investigator who issued the 38-page report rejected Lockwood's allegations against Genovese.  Docket Item 49 at 33, 36-38.  Likewise, the New York State Division of Human Rights investigated and found no probable cause that anyone had harassed Lockwood.  Docket Item 41-16 at 2-3.  So Lockwood's argument for disregarding Genovese's affidavit does not hold up.

In sum, Dunkirk has met its burden by providing its legitimate, nondiscriminatory reasons for firing Lockwood.

## III.   PRETEXT

"Because [Dunkirk] has produced evidence that it acted for non-discriminatory reasons, [Lockwood] may no longer simply rely on having made out a prima facie case." *See Gorzynski*, 596 F.3d at 107 (citing *Holcomb*, 521 F.3d at 141).  At this step of the analysis, the Court must examine "the evidence [Lockwood] has proffered and the counter-evidence [Dunkirk] has presented" and determine "whether [Lockwood] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause of [Dunkirk's] decision to fire her."  *See id.*  "[T]he creation of a genuine issue of fact with respect to pretext alone is not sufficient."  *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997).  In employment discrimination cases such as this one, "[t]he ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

Lockwood has not demonstrated pretext. She did not submit any exhibits, affidavits, testimony, or any other evidence with her response. "In fact, beyond the minimal proof required to state a prima facie case, [she] has offered *no* evidence that [s]he was discriminated against *because of [her] age*." *See Schnabel*, 232 F.3d at 88.

Lockwood seems to think that her "theory of the case" alone demonstrates pretext. *See* Docket Item 47 at 4. She says that Pleszewski preferred newer teachers who were younger because they were "more likely to acquiesce" to Pleszewski's demands, and she says that Dunkirk took no corrective action because it preferred Pleszewski as a tenured teacher. *Id.* But Lockwood does not support her theory with any evidence in the record. *See generally* Docket Item 47. So all the Court has is Lockwood's say-so.

At oral argument, Lockwood said that she believed there was evidence in the record that Pleszewski treated Szary, a younger teacher, better than Lockwood and that this differential treatment proved pretext. But this Court has reviewed the record and the only evidence of Pleszewski's giving Szary preferential treatment comes from Lockwood herself. For example, Lockwood reported that "[Pleszewski] didn't want to give me guidance. . . . [S]he didn't want to take me under her wing like she did the younger girls and give them guidance. She just kind of wanted to bash me." *See* Docket Item 41-4 at 61; *see also* Docket Item 41-13 (Lockwood's letter to Dunkirk superintendent contesting reasons for firing her). In other words, Lockwood's

"evidence" is nothing more than Lockwood's theory and does not raise an issue of fact as to pretext.[11]

What is more, the connection between Lockwood's theory and the conclusion that Dunkirk fired Lockwood because of her age is itself tenuous. Lockwood refers to the investigator's statement substantiating Lockwood's claims of harassment by Pleszewski, but evidence that Pleszewski generally acted poorly toward Lockwood reveals little about whether Lockwood's age was the reason for that poor treatment, let alone that it was a but-for cause of Dunkirk's decision to fire her. *See* Docket Item 47 at 4-5; Docket Item 49 at 38. In fact, because Pleszewski was not the decisionmaker, Lockwood's theory is really a red herring. *See Kulak*, 88 F.3d at 71 ("conclusory statements, conjecture, [and] speculation" cannot defeat summary judgment).

Lockwood insists that Genovese is biased, but reasons for discrediting testimony typically are not a basis for drawing conclusions contrary to sworn evidence. *See Anderson*, 477 U.S. at 256-57. Instead, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Id.* at 257; *see Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 693 (2d Cir. 2017) (summary order) ("That an 'interested witness' has testified regarding a certain issue . . . does not in and

---

[11] Lockwood also said in her deposition that although Pleszewski did not "expressly" insult her in a way that referred to her age, Pleszewski did so "implied[ly]" because "[i]n [Pleszewski's] opinion I . . . was incompetent and, you know, for my age, my experience, I should be doing a better job." Docket Item 41-4 at 126. Lockwood did not explain the basis for this testimony about Pleszewski's opinion, and her vague and conclusory statement does not show pretext. *See Kulak*, 88 F.3d at 71.

of itself raise a genuine issue of material fact.").  Lockwood has neither produced nor cited any such affirmative evidence.

Lockwood also challenges one of Dunkirk's reasons for firing her because it "sounds an awful lot like a lot like [sic] a lie."  Docket Item 47-1 at 11.  But "[s]imply asserting that a party is lying is insufficient to create a genuine issue of material fact." *Gilliard v. City of New York*, 2013 WL 521529, at *6 (E.D.N.Y. Feb. 11, 2013).  And despite a full opportunity to conduct discovery, Lockwood has not presented anything other than what she says to suggest that Dunkirk's stated reasons were pretext intended to mask discrimination.

Lockwood's remaining arguments likewise miss the mark.  She says that she is entitled to a jury trial on the issue of discriminatory intent, but she rests that argument entirely on her relatively weak prima facie case that Dunkirk replaced her with a younger person.  *See* Docket Item 47-1 at 3-4; *cf. Reeves*, 530 U.S. at 144, 151 (finding a jury issue where the plaintiff "made a substantial showing that [the employer's] explanation was false" and introduced evidence of the decisionmaker's age-related comments).  She offers no other evidence that might even suggest discrimination, such as "age-related comments or criticisms on the job."  *See Schnabel*, 232 F.3d at 91.  And as already noted, her unsupported age-discrimination theory centers on Pleszewski, someone who did not fire her and lacked supervisory authority over her.  Docket Item 1 at ¶ 11.[12]

---

[12] Furthermore, it is "highly relevant" and probative of nondiscrimination that Genovese, the person who recommended firing Lockwood, was the same person who had decided to hire her.  *See Schnabel*, 232 F.3d at 91.  This "same actor inference" can apply even when the supervisor at issue is not the only person with input into the decision, so long as the supervisor played a substantial role in the hiring, as Genovese

In sum, Lockwood has not raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a but-for cause of Dunkirk's decision to fire her.  Dunkirk therefore is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Dunkirk's motion for summary judgment, Docket Item 41, is GRANTED.  The Clerk of the Court shall close this case.


SO ORDERED.

Dated:   September 30, 2024
         Buffalo, New York


_/s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

did here.  *See Dorcely v. Wyandanch Union Free School Dist.*, 665 F.Supp.2d 178, 198 (E.D.N.Y. 2009).  Likewise, where, as here, "the termination occurs within a relatively short time after the hiring[,] there is a strong inference that discrimination was not a motivating factor in the employment decision."  *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137-38 (2d Cir. 2000) (collecting cases).